**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **WOLVERINE LAND HOLDINGS, L.L.C.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**SOUTHERN BUILDING GROUP, INC.,**<br><br>**Defendant.** | **Case No.** |

**COMPLAINT**

COMES NOW, Plaintiff Wolverine Land Holdings, L.L.C ("Wolverine"), by and through counsel, for its causes of action against Defendant Southern Building Group, Inc. ("SBG"), states and alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Wolverine is a limited liability company organized and existing under the laws of the State of Missouri, having its principal office in Springfield, Greene County, Missouri, and each of its members are residents and/or citizens of the State of Missouri.

2. SBG is a for-profit corporation organized and existing under the laws of the State of Tennessee, having its principal office in Murfreesboro, Rutherford County, Tennessee. SBG may be served by and through its registered agent, Joseph W. Gibbs, 1221 Broadway, Suite 2400, Nashville, TN 37203.

3. Personal jurisdiction and venue are proper in this Court, as SBG is a Tennessee entity with a principal place of business in Murfreesboro, Rutherford County, Tennessee, has engaged in sufficient minimum contacts with Rutherford County, Tennessee, and the claims herein arise in substantial part from its actions including transacting business, contracting to supply

services or things in Davidson County, Tennessee, and/or having an interest in, using, or possessing real property in Davidson County, Tennessee. *See* Tenn. Code Ann. § 20-2-223; 28 U.S.C. § 1391.

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, in that the amount in controversy exceeds $75,000 and there is complete diversity among the parties.

**FACTUAL ALLEGATIONS**

5. Chartwell Properties, LLC ("Chartwell") developed and continues to own the unsold condominium units at The Manning, a multi-unit residential luxury condominium development located in Nashville, Davidson County, Tennessee (the "Property"). Wolverine holds a security interest in the Property pursuant to the construction loan documents and related deeds of trust.

6. Upon information and belief, Donald Meeks, Richard Rhea, Larry Elliott, Joe Owen, David Hawkins, and Marjorie Hawkins each has, or at all relevant times had, a partnership interest in Manning Development, GP ("Manning Development").

7. On or about March 8, 2019, Manning Development and Chartwell executed a Development Agreement, wherein Manning Development agreed to develop The Manning in exchange for a fifty-one percent (51%) membership interest in Chartwell, plus monthly payments.

8. Upon information and belief, portions of the development and construction costs associated with The Manning were funded, directly or indirectly, by Chartwell and/or its members, investors, or related parties prior to and/or during the applicable construction financing arrangements.

## SIMMONS BANK LOAN

9. Additionally, in June 2019, Chartwell executed a Promissory Note, as well as other related documents, in the maximum principal amount of $55,800,000, in favor of Simmons Bank ("Simmons Loan").

10. The principals of Manning Development (which owns 51% of Chartwell), Mr. Meeks, Mr. Rhea, Mr. Elliott, Mr. Owen, Mr. Hawkins, and Ms. Hawkins, also executed guaranties of the Simmons Loan.

11. Pursuant to the Simmons Loan, the Commencement Date of The Manning was June 17, 2019, the Completion Date of The Manning was March 31, 2021, and the Maturity Date of the Simmons Loan was July 5, 2022.

12. Chartwell terminated its first construction manager and/or general contractor in 2020, upon information and belief, due to allegations that this initial construction manager and/or contractor intentionally delayed the project and intentionally increased construction costs.

13. In July 2020, Chartwell entered into an Owner-Construction Manager Agreement with KCC Contractor, Inc. ("KCC") in July 2020.

14. Construction was materially delayed and the project costs materially increased resulting in multiple amendments, restatements, increases, and modifications to the Simmons Loan.

15. Upon information and belief, as of December 2020, the Guaranteed Maximum Price ("GMP") with KCC was $57,800,000 and the anticipated completion date was November 30, 2021.

16. A third amendment to the Simmons Loan in August 2022 increased the principal sum to $62,700,000, moved the Completion Date of The Manning to December 31, 2022, and extended the Maturity Date of the Simmons Loan to July 5, 2023.

17. When the Simmons Loan, as amended, matured in July 2023, The Manning was not complete, and the budget had increased by approximately $30,000,000.

18. Chartwell was in default.

19. A fourth and final amendment to the Simmons Loan in August 2023 extended the Maturity Date of the Simmons Loan to October 5, 2023, however Chartwell remained in default.

**WOLVERINE LOAN**

20. In September 2023, following extensive negotiations, Wolverine purchased the Simmons Loan, including the related loan documents, guaranties, and security instruments, and Simmons Bank assigned its rights and interests to Wolverine. The applicable loan documents and security instruments were subsequently amended, restated, and/or reaffirmed to Wolverine.

21. In connection with Wolverine's assumption of the Simmons Loan and the related restructuring, Chartwell executed certain agreements and documents whereby Wolverine agreed to extend, continue, modify, restructure, and/or increase the existing indebtedness and provide for a maximum principal amount of $93,000,000 to pay off the Simmons Loan and fund continued development and construction of The Manning. The Completion Date of The Manning was extended to December 31, 2024, and the Maturity Date of the Wolverine Loan was extended to June 30, 2024 ("Wolverine Loan").

22. The Simmons Loan was secured by a deed of trust recorded in the Register's Office for Davidson County on June 17, 2019, before the visible commencement of operations at The Manning.

23. The Simmons Loan deed of trust is a construction mortgage that secured indebtedness arising under the construction loan agreement, including future construction advances. Simmons Bank assigned, among other things, its interest in this deed of trust to Wolverine in September 2023, and Chartwell subsequently executed an amended and restated deed of trust securing the Wolverine Loan. Wolverine contends that its deed of trust and the indebtedness secured thereby have priority over the lien subsequently asserted by SBG.

24. Mr. Meeks, Mr. Rhea, Mr. Elliott, and Mr. Owen executed amended and restated guaranties.[1]

25. Moreover, pursuant to the Wolverine Loan, although Mr. Meeks, Mr. Rhea, Mr. Elliott, Mr. Owen, Mr. Hawkins, and/or Ms. Hawkins were already fully informed, Chartwell had an affirmative duty to disclose the relationship between Wolverine and KCC to its members.

26. This purportedly occurred with Chartwell's October 1, 2023 Investor Update:

> The management team is pleased to report that Chartwell Properties, LLC (the Manning) has secured a contract amendment with Killian Construction Company (KCC) and closed $93 million in re-financing through its financing affiliate Wolverine Land Holdings, LLC (WLH). This closing occurred in very recent days with most of the final terms of the agreements entered late last week. It has been a very busy few weeks as the management team worked in securing and concluding all necessary documentation and matters to close this transaction.

27. No one objected or raised any concerns about Wolverine's relationship with KCC – per the Investor Update, Chartwell was "pleased" with KCC and Wolverine.

**KCC'S TERMINATION IN FAVOR OF SBG**

28. Chartwell terminated KCC in April 2024 and hired SBG as general contractor to continue the construction of The Manning.

29. In May 2024, Chartwell defaulted on the Wolverine Loan.

[1] Chartwell negotiated a release in favor of Mr. Hawkins and Ms. Hawkins.



Case 3:26-cv-01802 Document 1 Filed 11/09/26 Page 5 of 16 PageID #: 5

30. Chartwell entered into an Owner and Contractor Agreement with SBG in June 2024 ("SBG Construction Contract"), which included a Guaranteed Maximum Price under the SBG Construction Contract of approximately $18,000,000.

31. Also in June 2024, Chartwell and the guarantors[2] negotiated an amendment with Wolverine which, among other things: amended and restated Chartwell's obligations; increased Chartwell's indebtedness in construction loan funds to complete The Manning by $22,500,000; extended the Completion Date to March 15, 2025; extended the Maturity Date of the Wolverine Loan to March 31, 2025; and made corresponding amendments to the related loan documents, including Wolverine's deed of trust ("First Wolverine Amendment").

32. The First Wolverine Amendment also noted Chartwell's termination of KCC and selection of SBG.

33. At the time it terminated KCC and retained SBG, Chartwell represented that The Manning was approximately 85% complete.

34. Chartwell and SBG represented to Wolverine that it could complete The Manning for approximately $18,000,000 by February 2025.

35. SBG did not complete the construction of The Manning by February 2025.

36. In March 2025, Chartwell and its guarantors negotiated a second amendment with Wolverine which, among other things: amended and restated Chartwell's obligations; increased Chartwell's indebtedness in construction loan funds to complete The Manning by $12,050,000; extended the Completion Date and Maturity Date to September 30, 2025; and made corresponding

---

[2] Upon information and belief, Mr. Elliott did not execute any documents related to the First Wolverine Amendment due to his health, however, he remained a guarantor.

amendments to the related loan documents, including Wolverine's deed of trust ("Second Wolverine Amendment").

37. In May 2025, Chartwell and its guarantors negotiated a third amendment with Wolverine which, among other things: amended and restated Chartwell's obligations; increased Chartwell's indebtedness in construction loan funds to complete The Manning by $4,850,000, and made corresponding amendments to the related loan documents; and made corresponding amendments to the related loan documents, including Wolverine's deed of trust; ("Third Wolverine Amendment").

38. In addition, following default, Wolverine made protective advances, including payments for construction costs, retainage, and other property-related obligations to protect the collateral and Wolverine's security interest, including: i) $1,064,310.72 in or about November 2025 and ii) $608,528.08 in or about December 2025.

39. SBG did not complete construction of The Manning by September 2025.

40. Upon information and belief, SBG has submitted pay applications for, and received, more than $27,000,000 of funds that originated from Wolverine and were intended to complete the development of The Manning from 85% complete to full completion.

41. Chartwell, SBG, and the architect, Lowen+Associates, LLC, issued a Certificate of Substantial Completion in June 2025, and when asked to "*[i]dentify the list of Work to be completed or corrected,*" SBG and Chartwell represented that the only remaining work to be completed was "[p]unch lists . . . for the interior Common Areas, Building, Site and Building Exterior."

42. Moreover, in April 2026, SBG demanded release of its retainage claiming it should have been released on or before September 22, 2025, pursuant to Tenn. Code Ann. § 66-34-103(b).

43. SBG also represented to Wolverine that "the remaining work to be performed . . . [on The Manning is] all very minor change order work, such as miscellaneous door and trim installation, minor painting, and other finish work, and the amount payable for that work is $175,456.46."

**SBG & CHARTWELL'S UNDISCLOSED RELATIONSHIP**

44. In 2026, after the Wolverine Loan, all Wolverine Amendments, and paying more than $27,000,000 to SBG who had not completed construction by the date or for the amount as contracted and represented, Wolverine subsequently learned, upon information and belief, that the President of SBG, John Elliott, is the son of Larry Elliott, who was an owner of Manning Development and guarantor to the Wolverine Loan at the time Chartwell retained SBG, and whose Estate is still a member of the Manning Development.

45. SBG, Chartwell, and the guarantors intentionally failed to disclose the relationships with, and connections between them.

46. Chartwell represented that it was material for a contractor to have a relationship with another party involved in the development of The Manning, and that such relationships should be disclosed.

47. Wolverine had no knowledge of the relationship between SBG and Chartwell, and no notice to inquire about any such relationships.

**SBG'S LIEN**

48. On March 20, 2026, SBG recorded a Notice of Lien in the Register's Office for Davidson County, Tennessee, as Instrument No. 20260320-0022354 (the "SBG Lien"). Wolverine disputes the validity, scope, enforceability, amount, and priority of the SBG Lien.[3]

---

[3] The SBG Lien is attached as **Exhibit 1.**

49. Upon information and belief, Chartwell informed SBG of pending unit closings at the time SBG recorded the SBG Lien so SBG could record this Lien to encumber titles prior to the unit closings.

50. Facially, the SBG Lien represents that "John Elliott, being first duly sworn" makes the statements contained therein; however, the SBG Lien was not actually signed by John Elliott, but instead was executed by Paul Freas, SBG's Chief Operating Officer. The notarial acknowledgement likewise identifies Mr. Freas rather than Mr. Elliott as the person appearing before the notary.

51. The Manning comprises two contiguous parcels with three different street addresses – 110 Woodmont Boulevard, 116 Woodmont Boulevard, and 120 Woodmont Boulevard.

52. The SBG Lien only identifies "The Manning located at 120 Woodmont Boulevard, Nashville, Tennessee 37205" as the property subject to the lien.

53. Moreover, the SBG Lien purports to encumber all condominium units and common elements, including condominium units previously conveyed by Chartwell by third-party purchasers.

54. The SBG Lien is based on payment applications and labor, supplies, and materials that were not approved through the required processes.

55. The SBG Lien encumbers the Property for $2,514,691.53.

56. However, SBG admitted in June 2026 that the amount in the SBG Lien was overstated, and SBG was only allegedly owed $2,355,653.46.

57. To date, SBG has made no attempt to file an amended lien or a partial release, despite knowing unit sales, marketing, and closings are ongoing at The Manning and hindered by this Lien.

58. SBG did not contract with The Manning's association.

59. The Manning is not to be operated as a single improvement.

60. The SBG Lien also states SBG was "continuing to perform work" at The Manning, yet upon information and belief, SBG has not had an active permit since at least December 2025.

61. Upon information and belief, SBG performed outside the applicable building permits.

62. Pay applications submitted by SBG describe it as performing more work than simple punch-list items after obtaining substantial completion.

63. Upon information and belief, SBG is forgoing any attempts to recover from Chartwell.

64. Upon information and belief, Chartwell is not making reasonable efforts to validate, invalidate, challenge, nor satisfy the SBG Lien, which has interfered with the closing of condominium unit sales, prevented corresponding reductions in the indebtedness secured by Wolverine deeds of trust, and impaired Wolverine's collateral.

**CURRENT STATUS OF CONSTRUCTION**

65. Despite representations by SBG to the contrary, construction is not complete and multiple units have more than "punch-list" work remaining.

66. These photographs are an example of the status of construction at The Manning in July 2026 – more than a year after "substantial completion" and after SBG represented that only punch-list items remained:






67. Other contracted owners with presale contracts have threatened to file claims against Chartwell and Wolverine because their unit(s) remain unfinished and unclosed.

**CHARTWELL'S DEFAULT & WOLVERINE'S DEMAND**

68. On September 30, 2025 – the Completion and Maturity Date – construction was still ongoing and amounts due and owing under the Wolverine Loan exceeded $100,000,000.

69. Accordingly, demand for immediate payment was sent to Chartwell and the guarantors on or about October 6, 2025.

70. Despite representations to the contrary before Wolverine assumed the Simmons Loan, in response to the demand, Chartwell and the guarantors affirmatively stated they did not have the assets and/or ability to repay the amounts due and owing.

71. Instead of paying the debt, Chartwell filed suit against Wolverine, among others, in the United States District Court for the Middle District of Tennessee, styled *Chartwell Properties, LLC v. Low, et al.*, Case No. 3:26-cv-00204, making various claims against Wolverine related to the Wolverine Loan and Wolverine's relationship with KCC.

72. As of May 8, 2025, per the Wolverine Loan, as amended, Chartwell still owed Wolverine at least $104,460,455.93, with interest accruing and capitalizing on the fifth of each month.

**COUNT I**
**DECLARATORY JUDGMENT**

73. Wolverine realleges and incorporates by reference the allegations and exhibits as though fully set forth herein.

74. Wolverine disputes the validity, scope, enforceability, and amount of the SBG Lien.

75. SBG did not contract with The Manning's association.

76. The Manning is not to be operated as a single improvement.

77. The SBG Lien encompasses work performed on common elements and individual units, some of which closed for sale before SBG asserted its Lien.

78. The SBG Lien contains an erroneous property description.

79. A real, actual, subsisting, and justiciable controversy has arisen and presently exists between Wolverine and SBG concerning invalidity, scope, amount, and unenforceability if the SBG Lien.

80. Wolverine has no adequate alternative remedy, as the SBG Lien is interfering with the sale of units at The Manning and harming the reputation of the project.

81. Accordingly, pursuant to 28 U.S.C. § 2201 and Rule 57, Wolverine requests that the Court enter an order determining the validity, scope, enforceability, and amount of the SBG

Lien, finding it invalid, ordering its release, and granting such further relief concerning the SBG Lien as may be appropriate.

**COUNT II**
**EXAGGERATED LIEN**

82. Wolverine realleges and incorporates by reference the allegations and exhibits as though fully set forth herein.

83. The SBG Lien is willfully and grossly exaggerated, as it fundamentally encumbers the Property for more than the work SBG performed, in violation of Tenn. Code Ann. § 66-11-139.

84. SBG willfully and grossly exaggerated the SBG Lien to wrongfully encumber the Property in an effort to be paid more than it was owed.

85. Wolverine is entitled to its damages, attorneys' fees, and costs caused by SBG's willfully and grossly exaggerated Lien.

**COUNT III**
**SLANDER OF TITLE**

86. Wolverine realleges and incorporates by reference the allegations and exhibits as though fully set forth herein.

87. As the lender and first priority lien holder, Wolverine has an interest in The Manning.

88. SBG has published false statements about the title of The Manning and has refused to correct them.

89. SBG's actions were taken maliciously.

90. As a result, Wolverine has suffered damages, including pecuniary losses.

**COUNT IV**
**FRAUD IN THE INDUCEMENT / FRAUDULENT CONCEALMENT**

91. Wolverine realleges and incorporates by reference the allegations and exhibits as though fully set forth herein.

92. SBG, Chartwell, and/or the guarantors made representations and/or omitted material facts it had a legal duty to reveal to Wolverine, including representations and/or omissions related to the ability to satisfy loan obligations, the work to be performed by SBG and/or the relationship between SBG, Chartwell, and/or the guarantors.

93. SBG, Chartwell, and/or the guarantors' representations were false and/or omitted material facts.

94. SBG, Chartwell, and/or the guarantors' acted knowingly, recklessly, or without belief in the truth in making misrepresentations and/or omitting material facts.

95. SBG, Chartwell, and/or the guarantors intended for Wolverine to rely upon the representations and/or omissions.

96. Wolverine did rely upon the representations and/or omissions in assuming the Simmons Loan, entering into the Wolverine Loan, and/or agreeing to amendments to the Wolverine Loan.

97. SBG, Chartwell, and the guarantors' conduct was the direct and proximate cause of damages to Wolverine, including the cost the Wolverine Loan, Wolverine Amendments, and related consequential and incidental damages.

## COUNT V
## NEGLIGENT MISREPRESENTATION

98. Wolverine realleges and incorporates by reference the allegations and exhibits as though fully set forth herein.

99. SBG, Chartwell, and/or the guarantors made representations and/or omissions to Wolverine related to the ability to satisfy loan obligations, the work to be performed by SBG, and/or the relationship between SBG, Chartwell, and/or the guarantors.

100. That information was false.

101. SBG, Chartwell, and/or the guarantors did not exercise reasonable care in obtaining or communicating said information.

102. Wolverine justifiably relied on SBG, Chartwell, and/or the guarantors' representations, which caused it damages.

**COUNT VI**
**CONSPIRACY**

103. Wolverine realleges and incorporates by reference the allegations and exhibits as though fully set forth herein.

104. SBG, Chartwell, and/or the guarantors agreed and acted in concert to accomplish by concerted action an unlawful purpose or a lawful purpose by unlawful means.

105. SBG, Chartwell, and/or the guarantors each made overt acts in furtherance of the conspiracy.

106. As a result, Wolverine was injured and/or damaged.

**WHEREFORE**, Plaintiff Wolverine Land Holdings, L.L.C. respectfully requests relief and prays that:

1. Process issue to be served upon Defendant Southern Building Group, Inc., requiring its response as required in time and substance under the applicable rules and statutes;

2. Judgment against Defendant Southern Building Group, Inc., for damages not less than those incurred by Plaintiff Wolverine Land Holdings, L.L.C as a result of SBG's conduct as alleged herein and/or proven;

3. An award of prejudgment and post judgment interest, as available;

4. An award of costs and expenses, including reasonable attorneys' fees, paralegal fees, discretionary expenses, and litigation costs, as available; and

5. For such other and further relief as the Court deems just and proper.

Respectfully submitted,

*s/ Kristen O'Neal*

Kristen M. O'Neal, Mo. Bar No. 65077
Chase Fann, BPR No. 36794
SPENCER FANE LLP
511 Union Street, Suite 1000
Nashville, Tennessee 37219
Tele: (615) 238-6300
Fax: (615) 238-6301
cfann@spencerfane.com
koneal@spencerfane.com
*Counsel for Wolverine*